AO 106 (Rev. 04/010) Application for Search Warrant          AUTHORIZED AND APPROVED/DATE:    Brandon Hale 5/4/20

# UNITED STATES DISTRICT COURT
for the

| WESTERN | DISTRICT OF | OKLAHOMA |

In the Matter of the Search of )
*(Briefly describe the property to be search* )
*Or identify the person by name and address)* )
PROPERTY KNOWN AS: )    Case No: M-20-185-P
    Apple iPhone 7, Model – A1660, )
    IMEI: 354910094904853; )
IN THE POSSESSION OF: )
    FBI Oklahoma City Field Office )
    3301 West Memorial Road )
    Oklahoma City, Oklahoma 73134 )

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is (*check one or more*):
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:
| Code Section | Offense Description |
| 18 U.S.C. § 1591 | Sex Trafficking of Minors. |

The application is based on these facts:

See attached Affidavit of Special Agent David a. Garrison, Federal Bureau of Investigation, which is incorporated by reference herein.
- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

DAVID A. GARRISON
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: _5/6/20_____

City and State: _Oklahoma City, Oklahoma_

_Judge's signature_

_GARY M. PURCELL, U.S. Magistrate Judge_____
_Printed name and title_

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

This warrant applies to information associated with the cellular devices identified below that is currently in the care, custody and control of the FBI at 3301 West Memorial Avenue, Oklahoma City, Oklahoma 73134:

    a.  Apple iPhone 7, Model – A1660, IMEI - 354910094904853



## ATTACHMENT B

1.     All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 1591(a)(1), (b)(2) (sex trafficking of minors) and involve Samuel McCoy since February 1, 2020, including:

a.  Photographs, video files and other visual depictions of MV-1, MV-2, MV-3, MV-4, any other minor victim, and the female known as "Kash";

b.  lists of customers and related identifying information;

c.  all records and information relating to advertisements for commercial sexual activity;

d.  all information related to commercial sex acts involving any minor victim;

e.  all information regarding McCoy's schedule or travel from February 1, 2020 to the present;

f.  all financial records relating to the violations;



    g.  All communications relating to MV-1, MV-2, MV-3, MV-4 or "Kash," in whatever form, including iMessages, text messages (SMS and MMS), email, and any other form;

    h.  All social media activity relating to or evidencing commercial sex acts; and

    i.  All social media activity relating to any minor victim.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Records evidencing the use of the internet to commit the crimes described above, including:

    a.  records of Internet Protocol addresses used;

    b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

a) Content of all call logs, contacts lists, text messages, emails (including those sent, received deleted and drafted), instant messages, photographs, videos, social media account activity (including browser history, web page logs and search terms entered by the user), any applications (Apps) on the device, for example, but not limited to:

19

social media applications or platforms, chat programs, mapping programs or GPS programs, that could contain information, and other electronic media constituting evidence, fruits, or instrumentalities of the violation described above;

b)   Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

c)   Evidence or the lack thereof of malicious software;

d)   Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Target Device;

e)   Evidence of the times the Target Device was used;

f)   Any and all digital files, including image and video files depicting "Kash," MV-1, MV-2, MV-3 or MV-4.

g)   Passwords, encryption keys, and other access devices that may be necessary to access the Target Device;

h)   Contextual information necessary to understand the evidence described in this attachment, all of which constitute evidence, fruits and instrumentalities of the violation described above.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## INTRODUCTION

I, David A. Garrison, being duly sworn, depose and state the following:

1.      I am a Special Agent with the Federal Bureau of Investigation and have been

since June 6, 2005, and am assigned to the Oklahoma City, Oklahoma Field Office.

Since joining the FBI, I have been involved in investigations of child exploitation

matters and computer crimes against children.  I am currently assigned to

investigate violations of federal law involving the exploitation of children.  I have

gained expertise in the conduct of such investigations through training in seminars,

classes, and everyday work related to conducting these types of investigations in

my current role as an SA with the FBI.

2.      I am authorized to investigate violations of the laws of the United States. I

am a law enforcement officer with the authority to execute warrants used under the

authority of the United States.

3.      The facts and information contained in this affidavit are based on my own

investigation, information conveyed to me by other law enforcement officials,

information conveyed by cooperating individuals and witnesses, my personal

experience and training with related offenses, and my personal knowledge and

observations.

4.      The FBI Detroit's Southeast Michigan Trafficking and Exploitation Crimes

(SEMTEC) task force is investigating SAMUEL LEE MCCOY and others for

violations of 18 U.S.C. § 1591, sex trafficking of minors. All of the events listed in

this affidavit are believed to have occurred between May 2019 and the present.

5.      I submit this affidavit in support of a search and seizure warrant to search the

following cellular phone device (the "Target Device"):

> a.  Apple iPhone 7, Model – A1660, IMEI - 354910094904853
>
> The target device is currently in the care, custody and control of the FBI at
>
> the FBI Oklahoma City Field Office, 3301 West Memorial Road, Oklahoma
>
> City, Oklahoma 73134.

6.      I have not included each and every fact known to me concerning this

investigation. I have set forth only the facts necessary to establish probable cause

to search the Target Device for evidence related to violations of 18 U.S.C. § 1591

(sex trafficking of children, and sex trafficking through force, fraud, or coercion).

## PROBABLE CAUSE

7.      On February 24, 2020, Canton Police Officers were dispatched to the

Econolodge Motel (40500 Michigan Ave., Canton, MI) in response to a call for

service on a suspicious situation. The caller stated to Canton dispatch that there

were two or three younger females, believed to be younger than 17 years old, who

were possibly prostitutes, inside of room #206, with two men standing outside the

door and different, older males going in and out of the room. The Econolodge

2

often houses guest from other states who are traveling in interstate or foreign commerce.

8.     Canton Officers Pasick, Evans, and Dunlap responded and made contact with the front desk personnel from the motel, who stated the following: she has seen the male outside of room #206, he stays at the motel often, and she knows him as Samuel McCoy. McCoy was coincidentally standing in the lobby of the motel at the time and officers made contact with him. He was later fully identified as SAMUEL LEE MCCOY, date of birth 02/XX/1986.

9.     McCoy stated to officers that he was at the motel with his cousin and her friend, and he was going to take them to school. McCoy stated he had no problem with officers going to room #206 and checking on the occupants. Officers then went to room #206 and made contact with two females there: minor victim #1, a 14-year-old female (hereinafter MV-1); and minor victim #2, a 15-year-old female (hereinafter MV-2).

10.     After learning the true identities of the minor victims, Officer Pasick contacted MV-2's mother. MV-2's mother stated to Officer Pasick that McCoy was not related to either minor victim and that he was "tricking them out." MV-1 and MV-2 were then transported to Canton Police Department to await CPS notifications and parental notifications.

11.    Task Force Officer (TFO) Quinn and Special Agent (SA) Conolly then
arrived at the Econolodge motel and made contact with McCoy.  McCoy agreed to
speak with TFO Quinn and SA Conolly.  McCoy then stated the following:

     a.  McCoy admitted that he had rented the room, using his own name, but
       he denied that any criminal activity was happening in the room.

     b.  McCoy was asked to provide his cellular phone number, to which he
       provided (213) XXX-2580.[1]

     c.  Prior to the arrival of TFO Quinn and SA Conolly, McCoy had
       provided Canton Police Officers a different phone number: **(419) 356-
       7479**.

     d.  An open internet search using the (213) XXX-2580 number provided
       by McCoy located several advertisements for commercial sex acts.
       These ads appear to have been posted during the period May to
       August of 2019. When asked about the advertisements, McCoy stated
       he did not post the advertisements, and that the person who used to
       have his number must have posted them.

12.    TFO Quinn then made contact with the front desk employee, who stated that
approximately one year ago, McCoy was kicked out of the motel for prostitution-

---

[1] This is the same phone number McCoy provided to Canton Officers in July 2019 in a separate
incident.

related activity. When McCoy was asked about the incident, he denied having been involved in prostitution-related activity and stated he was kicked out of the motel because he had a dog in the room.

13.    A LG cellular phone was then seized from McCoy by TFO Quinn and SA Conolly due to the totality of the circumstances including the following: minors in the motel room, complaints of prostitution, McCoy's history of prostitution-related activity, and MV-2's mother's statements to the officers that McCoy was "tricking them out." McCoy was not arrested, however, and law enforcement was unable to locate him in Michigan since this date.

14.    Later in the investigation, a search warrant was obtained for the LG cellular phone.  The LG cellular phone was found to have phone number (213) XXX-2580 associated with it.

15.    During the course of the investigation, another minor victim, a 15-year-old female (hereinafter MV-3) was located. MV-3 provided SEMTEC SA Chris Szczygiel and TFO Andrew Carriger a phone number for McCoy of **(419) 356-7479**.

16.    TFO Carriger conducted an open internet search using the phone number **(419) 356-7479**. Results from the search showed multiple advertisements in the Canton, Michigan, area for commercial sex acts. The photographs in the advertisements were mainly of MV-3, in addition to some photographs of MV-1. I

know that the cellular telephone network and the internet are each instrumentalities of interstate and foreign commerce.

17.    On February 27, 2020, a forensic interview was conducted with MV-3. MV-3 stated the following:

    a.  MV-3 met McCoy a few weeks prior to the interview and knew him as "Sincere." She met him through a female she knows as "Kash." MV-3 stated that she met "Kash," McCoy and minor victim #4, a 15 year-old female (hereinafter MV-4), at a house in the Romulus area. Once they were introduced, the four of them went to Toledo, Ohio. In Toledo, MV-3 and MV-4 performed commercial sex dates that were arranged by McCoy and "Kash."

    b.  After a couple days in Toledo, MI, the group drove back to the Romulus area. "Kash" and MV-4 then went their own way and MV-3 asked McCoy to take her home.

    c.  McCoy agreed to take MV-3 home but, before doing so, he asked MV-3 to make some money with him. MV-3 stated McCoy told her to try one date with him and then he would take her home.

    d.  MV-3 stated she did the commercial sex date for McCoy and then continued doing more dates under his direction. McCoy posted all the advertisements for MV-3. He used his phone number, **(419) 356-7479,**

for the advertisements as well. McCoy did all the texting with the customers and set up the dates. Once he had a date set up, he would let MV-3 know a date was on the way or there.

e.  MV-3 then did the date according to the terms arranged by McCoy, and once the date left, MV-3 had to give the money to McCoy. McCoy then let her keep approximately $60 from the date.

f.  MV-3 stated that during the course of her time with McCoy, MV-1 and MV-2 started coming around. MV-3 stated that MV-2 attempted to do a date for McCoy when they were all together, but it didn't work. She was unaware if MV-1 and MV-2 had done any additional dates for McCoy because shortly after they came around, she left and went back home.

g.  MV-3 was shown an advertisement for commercial sex acts from February 15, 2020, which was posted for Toledo, OH. MV-3 identified the phone number in the advertisement as McCoy's number, **(419) 356-7479**, and identified MV-1 and herself in the pictures associated with the advertisement.

h.  SEMTEC TFO Carriger informed me that, based on his observations, as well as those of other officers, MV-1 appears to be approximately 12-14 years of age, MV-2 appears to be approximately 15 years old,

and MV-3 appears to be approximately 12-14 years of age. Further

investigation has revealed that a relative of MV-3 recently told

McCoy to stay away from MV-3 as she was only 15 years old. In

addition, a relative of MV-2 recently told McCoy that MV-2 was also

underage.

18.    MV-3 provided consent to search the contents of her cellular phone. During

the search, officers located an "iMessage" conversation between MV-3 and phone

number **(419) 356-7479**.

     a.  On February 9, 2020, MV-3 sent several pictures to **(419) 356-7479**,

        including a video of herself that meets the federal definition of child

        pornography.

     b.  Several of the photographs/videos sent from MV-3 to **(419) 356-7479**,

        are photographs and videos observed in the advertisements for

        commercialized sex.

     c.  On February 11, 2020, **(419) 356-7479** sent an iMessage to MV-3

        stating, "Got another one on his way 20 minutes away for 160".

19.    iMessages are unique to Apple devices, and are used for messaging between

two Apple accounts via the internet. Because MV-3's cellular phone shows

iMessages between McCoy and MV-3, SEMTEC TFO Carriger believes that

McCoy must also have an AppleID and Apple device that he used to communicate

8

with MV-3. The LG phone that was seized from McCoy on February 24, 2020, was most likely an older phone, which is further established by the fact that the advertisements linked to that phone were from the previous year.

20.     A subpoena was sent to Sprint Communications for the subscriber information for the phone number **(419) 356-7479**. The results from the subpoena showed the subscriber of the phone number **(419) 356-7479**, belonging to a "Sincere McCoy," active from February 8, 2020, to current subpoena submission date (March 4, 2020).

21.     Through law enforcement techniques, advertisements were located that used phone **number (419) 356-7479** as the contact number. These ads started no later than February 9, 2020, and ran through at least March 1, 2020. All the advertisements have photographs that depict MV-3. As of February 12, 2020, some of the advertisements also depict MV-1 as well. The majority of the advertisements located make reference to sex acts involving the minor victims.

22.     On March 9, 2020, a federal complaint was sworn out in the Eastern District of Michigan charging McCoy with violating 18 U.S.C. § 1591 in connection with his activities with MV-1, MV-2, MV-3 and MV-4. An arrest warrant for McCoy was also issued by the Court. McCoy had no permanent address in Michigan, however, and could not be located. A subpoena was subsequently sent to Apple on March 26, 2020, requesting the Apple Account associated with phone number

9

**(419) 356-7479**.  The results from the subpoena showed the account associated

with **(419) 356-7479** was **samuelsinceremccoy86@icloud.com**.

23.     On April 22, 2020, advertisements for commercialized sex were located by

searching for McCoy's phone number, **(419) 356-7479**.  The commercial sex

advertisements were for the area of Oklahoma City, OK.

24.     On April 24, 2020, Oklahoma City Police Department Vice Unit (OCPD

Vice) contacted the advertisement number, **(419) 356-7479**, and set up a

commercial sex date.  They made contact with a person utilizing that number and

were direct to a Motel 6 located at 1337 SE 44th Street, Oklahoma City, Oklahoma

73129.  Once there, an undercover OCPD Vice detective made contact with an

adult female and, after developing probable cause, arrested her for solicitation of a

sex act under Oklahoma state law.  During the course of the operation, an OCPD

Vice detective observed an adult male matching the description of McCoy outside

the front door of the motel.  The adult male entered the front passenger seat of a

commercial truck parked near the front door of the motel.  Once the adult female

was arrested, OCPD officers approached the commercial truck and made contact

with the adult male.  He was identified as McCoy and taken into custody for his

federal Sex Trafficking warrant.  Located on the front passenger seat of the

commercial truck was the Target Device, which was subsequently seized.  Because

McCoy continues to use an Apple iPhone with phone number **(419) 356-7479**, I

believe that this device is the same device that he used in connection with the offenses described in the criminal complaint that led to his arrest. I further believe that, since McCoy posted advertisements for acts of prostitution using the same phone number that he used to traffic MV-1, MV-2, MV-3 and MV-4, he was unaware that law enforcement was interested in him and so had no cause to obtain a different device costing hundreds of dollars. Moreover, I am aware that even if McCoy were to have obtained a new device, any new device will likely include all relevant data and information from his previous device. This is because cell-phone owners often move all or almost all of the information from their previous device to their new device when they change phones, and most apps, functions and data on cell-phones are synchronized across devices using the internet or computer back-ups.

## TRAINING AND EXPERIENCE RELATING TO COMMON CHARACTERISTICS OF SEX TRAFFICKERS

25.     In the sex trafficking investigations I have worked on, cellular devices have been used, including but not limited to use for the following purposes: recruit trafficking victims, posting advertisements, setting up commercial sex dates, communicating about the dates between the victim and traffickers, etc.

26.     It is common for sex traffickers to use more than one cellular phone for these purposes. Based on my training and experience, I know that sex traffickers

often have several phones designated for different purpose. For example, they often have a personal phone and a "date" phone that is used to set up dates for commercial sex. In addition to the "date" phone, the personal phone of the trafficker also contains information relevant to a sex trafficking investigation such as messages with victims, messages with other traffickers bragging about their illegal exploits, and social media messages that may reference or refer to their sex trafficking activities.

27.     I know based on my training and experience that sex traffickers often maintain possession and control of the phones of their victims. They may have more than one at a time depending on how many victims they are trafficking, or how many accounts they are handling. These phones often contain several accounts for websites like megapersonals.com and applications like TextNow and MocoSpace, that are commonly used to facilitate human trafficking.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.     Based on my knowledge, training, and experience, I know that electronic devices, including cell phones, can store information for long periods of time. Similarly, messages, photos, videos and things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools even if the user attempted to delete the file(s) from the device.

12

29.   *Forensic evidence.* This application seeks permission to locate not only

electronically stored information that might serve as direct evidence of the crimes

described on the warrant, but also forensic evidence that establishes how the Target

Device was used, the purpose of its use, who used it, and when. There is probable

cause to believe that this forensic electronic evidence might be on the Target

Device:

   a.   Data on the storage medium can provide evidence of a file that

was once on the storage medium but has since been deleted or edited, or of a

deleted portion of a file (such as a paragraph that has been deleted from a

word processing file). Forensic evidence on a device can also indicate who

has used or controlled the device. This "user attribution" evidence is

analogous to the search for "indicia of occupancy" while executing a search

warrant at a residence.

   b.   A person with appropriate familiarity with how an electronic

device works may, after examining this forensic evidence in its proper

context, be able to draw conclusions about how electronic devices were

used, the purpose of their use, who used them, and when.

   c.   The process of identifying the exact electronically stored

information on a storage medium that are necessary to draw an accurate

conclusion is a dynamic process. Electronic evidence is not always data that

can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cell phone is evidence may depend on other information stored on the cell phone and the application of knowledge about how a cell phone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      d.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Device. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the wireless telephone to human inspection in order to determine whether it is evidence described by the warrant.

31.   *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

14

## CONCLUSION

32.    Based on the above information and my experience and training, there is

probable cause to believe the Target Device contains evidence of violations of 18

U.S.C. § 1591, sex trafficking of a minor.  I request that a warrant be issued to

search and examine the following Device currently in the custody of FBI

Oklahoma City:

      a.   Apple iPhone 7, Model – A1660, IMEI - 354910094904853

 

 

_____
David A. Garrison
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

Date:   5/6/20

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

This warrant applies to information associated with the cellular devices identified below that is currently in the care, custody and control of the FBI at 3301 West Memorial Avenue, Oklahoma City, Oklahoma 73134:

a. Apple iPhone 7, Model – A1660, IMEI - 354910094904853



## **ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 1591(a)(1), (b)(2) (sex trafficking of minors) and involve Samuel McCoy since February 1, 2020, including:

     a.  Photographs, video files and other visual depictions of MV-1, MV-2, MV-3, MV-4, any other minor victim, and the female known as "Kash";

     b.  lists of customers and related identifying information;

     c.  all records and information relating to advertisements for commercial sexual activity;

     d.  all information related to commercial sex acts involving any minor victim;

     e.  all information regarding McCoy's schedule or travel from February 1, 2020 to the present;

     f.  all financial records relating to the violations;



g. All communications relating to MV-1, MV-2, MV-3, MV-4 or "Kash," in whatever form, including iMessages, text messages (SMS and MMS), email, and any other form;

h. All social media activity relating to or evidencing commercial sex acts; and

i. All social media activity relating to any minor victim.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the internet to commit the crimes described above, including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

18



As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

    a)    Content of all call logs, contacts lists, text messages, emails (including those sent, received deleted and drafted), instant messages, photographs, videos, social media account activity (including browser history, web page logs and search terms entered by the user), any applications (Apps) on the device, for example, but not limited to:

19



social media applications or platforms, chat programs, mapping programs or GPS programs, that could contain information, and other electronic media constituting evidence, fruits, or instrumentalities of the violation described above;

b)   Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

c)   Evidence or the lack thereof of malicious software;

d)   Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Target Device;

e)   Evidence of the times the Target Device was used;

f)   Any and all digital files, including image and video files depicting "Kash," MV-1, MV-2, MV-3 or MV-4.

g)   Passwords, encryption keys, and other access devices that may be necessary to access the Target Device;

h)   Contextual information necessary to understand the evidence described in this attachment, all of which constitute evidence, fruits and instrumentalities of the violation described above.

20

